UNITED STATES of America,
Plaintiff-Appellee,

v.

1,638 CASES OF ADULTERATED ALCOHOLIC BEVERAGES AND OTHER ARTICLES OF FOOD, Defendants,

and

K and L Distributors, Inc.,
Claimant-Appellant.

No. 77–2462.

United States Court of Appeals,
Ninth Circuit.

June 26, 1980.

George Alexander McKray, San Francisco, Cal., for claimant-appellant.

John R. Fleder, Atty. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before THORNBERRY *, CHOY and PREGERSON, Circuit Judges.

THORNBERRY, Circuit Judge:

K & L Distributors, Inc. brings this appeal from a judgment for the destruction of 1,638 cases of alcoholic beverages entered by the United States District Court for the District of Alaska under the authority of the Federal Food, Drug and Cosmetic Act (Act), 21 U.S.C. § 301 *et seq.* The district court stayed destruction of these articles pending appeal to this court. K & L asserts that the district court erred in ruling that appellant's method of reconditioning the articles must be rejected in favor of the method approved by the Food and Drug Administration (FDA). Appellant also suggests that reconditioned articles should be released from seizure on the basis of sampling and that administrative tolerances should be applied to determine if articles should be released from seizure.

On November 11, 1974, a flood swept through the City of Nome, Alaska, caused by storm driven waves from the Bering Sea with the wind reaching speeds of 70 miles per hour. The flood waters caused extensive damage to the commercial district of Nome. Included in the commercial district is the Bering Sea Saloon, the location of the articles that are the subject of this controversy. The flood waters apparently burst through the back door of the saloon, resulting in merchandise being thrown to the ground and being exposed to various amounts of sea water.

The flood also destroyed the city's sewage disposal plant. The raw untreated sewage effluent was dumped into the Snake River and it fanned out in all directions when it reached the Bering Sea. This situation continued for a period of between sixteen and eighteen hours. It is possible that the raw sewage was washed into the commercial district of Nome and into the Bering Sea Saloon by the waves.

This action was initiated by the United States on March 27, 1975, by filing a Complaint for Forfeiture seeking the seizure and condemnation of liquor and other articles, claiming that the items had been held under insanitary conditions which may have caused them to become contaminated with filth or may have rendered them injurious to health. The articles were seized by the United States Marshal pursuant to an arrest warrant on April 1, 1975.

On June 3, 1975 K & L consented to the condemnation and destruction of the beer and nonalcoholic articles of food. On June 9, 1976, K & L entered into another consent decree with respect to the cases of alcohol. First, K & L admitted that the articles under seizure were adulterated in violation of 21 U.S.C. § 342(a)(4). They were therefore condemned pursuant to 21 U.S.C. § 334(a). Second, the consent decree provided that the goods were to be released from custody for the purpose of reconditioning the articles pursuant to 21 U.S.C. § 334(d) under the supervision of the FDA. Because the alcohol may have been contaminated by raw sewage, the FDA would only approve a reconditioning plan that included redistillation of the alcohol. Appellant claimed that this plan would be economically disastrous and brought an action seeking approval and implementation of its reconditioning plan. The district court approved the FDA's plan. Appellant's Motion to Permit Reconditioning After Decree of Condemnation and Motion for Reconsideration were both rejected. The district court then ordered the condemned articles destroyed but stayed the order during the pendency of this appeal.

K & L initially contends that the owner of seized goods should have the right to choose the method of reconditioning that is to be used to bring adulterated articles in compliance with the Act. In assessing this claim, we must first examine the statutory framework surrounding this type of situation. Section 334(a)(1) of the Act allows a district court to condemn any article that is adulterated while held for sale after shipment in interstate commerce. A product is "adulterated" if it has been "held under

---

* Honorable Homer Thornberry, Senior Circuit Judge, Fifth Circuit, sitting by designation.

insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 342(a)(4). After it is determined that an article is "adulterated," it is subject to seizure pursuant to an arrest warrant. 21 U.S.C. § 334(b). The article is then disposed of by destruction or sale unless, upon payment of the costs of the proceeding and execution of a sufficient bond, the court orders the articles to be delivered to the owner to be destroyed or brought into compliance with the provisions of the Act under the supervision of an officer designated by the Secretary of Health, Education and Welfare. 21 U.S.C. § 334(d)(1).

K & L admitted in the consent decree that the articles were adulterated. The consent decree provided that they were to be returned to K & L to be reconditioned under the supervision of the FDA. The only remaining question then is whether "under the supervision of" the FDA requires appellant to adopt the FDA's recommended method of reconditioning the articles. K & L suggested a plan of reconditioning that included a soap and water washing of the bottles followed by a hypochlorite dip. Evidence existed which indicates that the bottles had been submerged in the seawater long enough to cause destruction of labels and stamps, leaking closures, and sediment and silt deposited on the neck, shoulder, and body of the bottles. There was also an indication that filth might be lodged between the caps and lips of the bottle. K & L's proposal was found unacceptable because it would not solve the problem of the filth under the caps. If a cap was removed for additional cleaning, there would be further contamination. Therefore, the FDA provided that the only acceptable method for remedying the insanitary condition would be through a complete reprocessing of the product by redistillation.

It is the duty of the FDA to protect the health and welfare of the general public. *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Sullivan*, 332 U.S. 689, 68 S.Ct.

331, 92 L.Ed. 297 (1943); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). Therefore, the courts that have dealt with the issue presented in this case have held that it is proper to rely on the scientific expertise of the FDA in determining the acceptability of a reconditioning proposal and to require FDA approval of a reconditioning plan. *United States v. Allan Drug Co.*, 357 F.2d 713 (10th Cir.), *cert. denied*, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966); *United States v. 1,322 Cans, More or Less, of Black Raspberry Puree*, 68 F.Supp. 881 (N.D.Ohio 1946). In *Allan*, the Tenth Circuit addressed the meaning of the language of § 334(d)(1) as it applies to misbranded drugs. The court stated that once a district court delivers a misbranded (or adulterated) article to the owner to bring it into compliance with the law under the supervision of an officer designated by the Secretary of HEW,

> the supervisory powers committed to the Secretary undoubtedly carry broad authority to determine whether and in what manner the labeling may be brought within compliance with the act. The judicial function is concerned with the end product of the labeling process. While the final decision lies with the courts, great weight must be given to the administrative decision.

357 F.2d at 719. The district court in *1,322 Cans* reached a similar conclusion with respect to articles of adulterated food when it stated that

> The Food and Drug Administration has determined that distillation is the only process which would recondition this puree for human consumption and which it would approve. I see no abuse of discretion in making this determination. To interfere would be substituting the judgment of the court for that of the Food and Drug Administration upon a matter which it is better able to decide upon an issue which I think is not properly joined in this case.

68 F.Supp. at 881.

The district court properly deferred to the expertise of the FDA. While this court

is not bound by *Allan* or *1,322 Cans*, we choose to follow the reasoning of those cases. A district court may rely on and give great weight to the FDA's finding that a reconditioning plan is not scientifically acceptable. The FDA did not abuse its discretion, even in light of the economic hardship imposed on appellants by its reconditioning plan. The district court, in its discretion, properly adopted the determination of the FDA.

Because we have already determined that the district court properly adopted the FDA's procedure, we need not address appellant's contention concerning sampling and its suggestion concerning the adoption of administrative tolerance levels.

AFFIRMED.