UNITED STATES of America, Plaintiff,

v.

AN ARTICLE OF FOOD CONSISTING OF 126 CASES, MORE OR LESS, EACH CONTAINING 12 THREE–POUND JARS, LABELED: (CASE AND JAR) "PURE RAW HONEY PACKED FOR J.G. SAMPLES, 1313 S. Eastern Ave., Oklahoma City, OK 73129 Net wt. 3 lbs. Contents (32 Fl. Ozs.)", Defendant.

No. CIV–81–206–D.

United States District Court, W.D. Oklahoma.

June 1, 1982.

**16**

David L. Russell, U.S. Atty. by Charles L. Waters, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff.

John L. Wolking, El Reno, Okl., for claimant, J.G. Samples.

## ORDER

DAUGHERTY, District Judge.

This matter comes before the Court on the Motion of J.G. Samples, the intervening Claimant, for approval of labels with which he proposes to bring the condemned article of food into compliance with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "Act"). The Motion is supported with a Brief, the Plaintiff has responded with a Brief, and oral arguments have been heard. The administrative record has been filed herein, and the parties have agreed that it is complete.

A decree was previously entered herein, by consent of the parties, condemning the libeled article of food for reasons of adulteration and misbranding. In the decree, the Court permitted the Claimant to take custody of the condemned article, subject to certain conditions, "for the purpose of attempting to bring said article into compliance with the Federal Food, Drug, and Cosmetic Act" under the supervision of the Food and Drug Administration ("FDA") of the Department of Health and Human Services. This disposition of the condemned article was made pursuant to 21 U.S.C. § 334(d)(1), which provides the Court with authority to direct that the article be delivered to the owner to be destroyed or brought into compliance "under the supervision of an officer or employee duly designated by the Secretary [of the Department of Health and Human Services]." The Court of Appeals for the Tenth Circuit has said:

> "The trial court has a wide discretion in determining whether an article condemned under § 352 may be delivered to an intervening claimant under § 334(d)

to be brought within compliance with the Drug Laws under the supervision of the Secretary or his delegate. [citations omitted] But, the question whether an article condemned for its false and misleading labeling has been brought within compliance of the Act is a different matter altogether. As to that, the supervisory powers committed to the Secretary undoubtedly carry broad authority to determine whether and in what manner the labeling may be brought within compliance with the Act. The judicial function is concerned with the end product of the labeling process. While the final decision lies with the courts, great weight must be given to the administrative decision." *United States v. Allan Drug Co.*, 357 F.2d 713, at 719 (10th Cir.1966).

Hence, if the Court exercises its discretion to permit an intervening claimant to attempt to bring the condemned article into compliance with the Act, it must be done under administrative supervision, and the initial determination of the legality of the new labeling is for the administrative body. *United States v. An Article of Device ... Diapulse*, 650 F.2d 908 (7th Cir.1981).

█ As to the form of the review, while the Court must give great weight to the administrative decision, the determination of whether the Claimant has satisfied the conditions of the Court's decree rests finally with the Court, and the Court should consider evidence offered by the parties even though it may go beyond the administrative record. *See Buticaps, Inc. v. United States*, 102 U.S.App.D.C. 253, 252 F.2d 634 (1958), in which the Court, without mentioning any post-decree administrative determination as to the proposed relabeling, held that where the decree of the Court gave the claimant an opportunity to bring the label into compliance, it was error and a denial of due process to deny a motion of the claimant to approve the use of the name "Buticaps" without an evidentiary hearing to determine whether the name was misleading. However, such evidence should not substantially change the nature of the proposed relabeling, lest the Court permit the Claimant to short circuit or avoid the FDA super-

vision required by statute. In the instant case, the parties have filed a Stipulation as to all material facts not apparent from the record, and the Court finds that the Stipulation does not change the nature of the proposed relabeling. As the parties were given an opportunity at the hearing on the instant Motion to present evidence beyond the administrative record and the Stipulation and declined so to do, the Court may decide the Motion on the basis of the record and the Stipulation.

The test the Court must apply in reviewing the relabeling decision of the FDA is whether the FDA's rejection of the relabeling proposal was arbitrary and capricious or an abuse of discretion. *United States v. 1,638 Cases of Adulterated Alcoholic Beverage*, 624 F.2d 900 (9th Cir.1980); *United States v. Various Cases of Adulterated Alcoholic Beverages*, 421 F.Supp. 1 (D. Alaska 1976). Drawing on Federal Trade Commission cases, the Court of Appeals for this Circuit, in *United States v. Allan Drug Corp.*, *supra*, similarly defined the test as whether the administrative decision "is warranted in the record and supported in law," 357 F.2d at 718–719.

Whether the proposed label would "misbrand" the article depends on the meaning of the relevant regulation. The Act authorizes the promulgation of "standards of identity" for food, and such "standards of identity" are required to designate the optional ingredients, if such are permitted, which shall be named on the label. 21 U.S.C. § 341 provides, in pertinent part:

Whenever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers, he shall promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity, a reasonable standard of quality, and/or reasonable standards of fill of container: ... In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the Secretary shall, for the purpose of promoting honesty and

fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label.

The condemned article of food herein was originally labeled "Pure Raw Honey" but, the parties agree, actually falls within the definition of "Table Sirup" as defined by the standard of identity which has been promulgated for that product, 21 C.F.R. § 168.180. This regulation, as required by the statute, specifies that the optional ingredients that may be used in the standardized food called "table sirup" include, *inter alia,* emulsifiers, stabilizers, flavorings, color additives, chemical preservatives, and agents of various kinds. As to labeling, Section 168.180 states:

> (d)(1) Each of the optional ingredients used shall be declared on the label as required by the applicable sections of Part 101 of this chapter.

Part 101, § 101.4(a), requires a label to list ingredients "by common or usual name in descending order of predominance by weight." As the condemned article of food is one for which a standard of identity has been prescribed, it is subject to 21 U.S.C. § 343(g), which provides:

> A food shall be deemed to be misbranded—
>
>   \*    \*    \*    \*    \*    \*
>
> (g) If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

It is obvious that any of the proposed labels could cause the condemned article of food to be misbranded. When it was seized, the article of food was labeled "Pure Raw Honey." Subsequent analysis provided by the Claimant and included in the record shows that the article is approximately 80 percent corn syrup and 20 percent honey.

Hence, the parties agree that the "Table Sirup" standard of identity is the appropriate standard. Further, the Government admits that it has no reason to question the accuracy of the 80–20 analysis. However, the parties have stipulated that this analysis does not preclude the existence of added flavors, colors, stabilizers, preservatives, and similar ingredients and that no laboratory analysis is capable of providing a complete compositional breakdown. Thus, while the parties stipulate that the condemned food is fit for human consumption, they also agree that they do not know whether the condemned article contains any of the above optional ingredients. As a result, the FDA has taken the position that the only formulary information which it would accept would be a sworn statement from the Claimant's supplier giving the complete formula. The Claimant has been unable to provide this sworn statement.

■ Hence, the issue before the Court is whether the FDA has acted arbitrarily or capriciously or has abused its discretion by refusing to approve the label prepared by Claimant based on incomplete information where neither the FDA nor the proponent of the label has complete formulary information. In other words, is the burden on the FDA to show that the article of food contains an ingredient which is not in the label, or is the burden on the proponent of the label to show that the label is in complete compliance with the regulation?

The Court concludes that the burden is on the Claimant who proposed the label. The regulation requires that the optional ingredients used be "declared on the label." 21 C.F.R. § 168.180(d)(1). Clearly, the person who is to "declare" the ingredients is the person who proposes to put the article of food in the stream of commerce, not the Government. There is nothing about this which conflicts with the requirements that food not be "misbranded." 21 U.S.C. § 343(g). Clearly, such "misbranding" is done by the proponent of the label and the article, not the Government. Moreover, if the burden were otherwise, the FDA would have the insurmountable task of conducting

an indefinite number of scientific analyses on any questioned article. By contrast, it is a simple matter for the maker of the article to place a complete and honest label thereon. Placing the burden on the proponent of the article and the label promotes the purposes of the Act to protect the consuming public and to encourage reliance upon the uniform quality of standardized commodities. *United States v. 30 Cases, etc.,* 93 F.Supp. 764 (S.D. Iowa 1950).

Further, a primary purpose of promulgating standards of identity is to protect the consumer from "economic adulteration," by which less expensive ingredients are substituted for more expensive ingredients. *Federal Security Administrator v. Quaker Oats Co.,* 318 U.S. 218, at 230, 63 S.Ct. 589, at 596, 87 L.Ed. 724, 158 A.L.R. 832 (1943). Similarly, if the condemned article contains chemical preservatives and other optional ingredients in even minute amounts, such fact, in view of the increasing concern about chemical additives and preservatives in food, may reduce the value of the article in the eyes of the informed consumer. But the consumer today can reasonably get the information necessary to his making informed choices only from the product labels required by the Act.

The Court concludes that the FDA did not act arbitrarily and capriciously or abuse its discretion in refusing to approve the proposed label, as it appears the article may contain ingredients which must be named (such as stabilizers and preservatives) else the same is misbranded and such ingredients are not named in the proposed label under consideration. Further, the Court considers meritless the Claimant's contention that the Plaintiff should not be allowed to go beyond the allegations in the Complaint and the resulting suggestion that complete compliance with the Act is not required, after the entry of the decree upon certain grounds.