**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**AN ARTICLE OF DEVICE ... DIA-PULSE, Defendant-Appellee.**

Nos. 80–1904, 80–1905 and 80–1939.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1981.

Decided June 10, 1981.

---

**6.** Circuit Rule 18 shall apply.

Fredrick H. Branding, Asst. U. S. Atty. Chief, Civil Division, Richard E. Geyer, Associate Chief Counsel, Food and Drug Administration, Rockville, Md., for plaintiff-appellant.

Michael G. Berkman, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Circuit Judge, GIBSON, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

---

\* The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. The Diapulse is a "pulsed high frequency generator similar to a conventional diathermy unit but with a lower output, intended to create a unique athermal effect * * *." *United States v. Diapulse Corporation of America*, 457 F.2d 25, 26 (2d Cir. 1972). In short, it emits heat and pulsed electromagnetic energy.

This case is another chapter in the Food and Drug Administration's decade-old campaign to remove the Diapulse device from the channels

CUMMINGS, Circuit Judge.

These appeals arose from two civil seizures under Section 304(a) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 334(a)) to condemn two identical medical devices known as "Diapulse" devices.[1] The Government, on behalf of the Food and Drug Administration (FDA), alleged that the devices were misbranded within the meaning of 21 U.S.C. §§ 352(a) and 352(f)(1) in that they were ineffective for the claims contained in their labeling and failed to bear adequate directions for their use. At the outset of the trial in December 1977,[2] the claimant, Dr. Henry Niemeyer, stated that he would not defend the claims presented in the labeling and instead sought to have the devices brought into compliance with the law through relabeling.

The district court ruled that the Government was entitled to partial summary judgment, but, over the Government's objection, declined to condemn the devices and instead conducted a trial to determine the validity of the claims in the relabeling proposal. On May 1, 1980, in accordance with findings of fact and conclusions of law issued on March 28, 1980, the district court entered a judgment directing that the devices be returned to claimant provided that they be relabeled solely for use "as adjunct treatment of soft tissue inflammation, sprains or strains" (Govt.App.29). The Government appeals in Nos. 80–1904 and 1905, contending that the district court erred in (1) conducting a trial de novo to determine the validity of claimant's relabeling claims rather than condemning the devices and requiring claimant to submit a compliance proposal to the

of commerce, a campaign that apart from this case has been wholly successful. See generally, *United States v. Diapulse Corp. of America, supra*, 457 F.2d at 26–27; see also *United States v. An Article of Device Consisting of One Diapulse Device, More or Less, etc.*, No. 77–532–N (E.D.Va., December 17, 1980).

2. The first device was seized from the claimant's medical offices on February 26, 1973; the second on February 3, 1975. The two cases were consolidated for trial.

FDA; (2) finding that the Diapulse is effective for treatment of tissue inflammation, sprains and strains; and (3) granting claimant's pre-trial motion to release the second seized device for use pending trial. In No. 80–1939, claimant cross-appeals, contending that the district court erred in finding the Diapulse ineffective in the healing of wounds and bone fractures. We agree with the Government's first argument. It disposes of the controversy so that we need not reach the other issues raised in the appeals.

■. A device is misbranded if any portion of its labeling is "false or misleading in any particular." 21 U.S.C. § 352(a); *Orthopedic Equipment Co. v. Eutsler*, 276 F.2d 455, 459 (4th Cir. 1960); *United States v. Six Dozen Bottles*, 158 F.2d 667 (7th Cir. 1947). Once a device is found to be misbranded, it must be condemned pursuant to 21 U.S.C. § 334(a).[3] *United States v. 76,552 Pounds of Frog Legs*, 423 F.Supp. 329 (S.D. Tex.1976); *United States v. Diapulse Manufacturing Corporation of America*, 269 F.Supp. 162, 169 (D.Conn.1967), affirmed, 389 F.2d 612 (2d Cir. 1968). After entering a condemnation decree, a district court may in its discretion order the condemned article to be destroyed, sold or returned to the owner "to be destroyed or brought into

compliance with the provisions of [the Act] under the supervision of an officer or employee duly designated by the Secretary [of Health, Education and Welfare]." 21 U.S.C. § 334(d)(1).[4]

■ Thus, as the statutory language makes plain, where a claimant seeks to bring a misbranded device into compliance through relabeling, "the initial determination of the legality of the new labeling is for the administrative body." *United States v. Diapulse Manufacturing Corporation of America*, 389 F.2d 612 (2d Cir. 1968), certiorari denied, 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365.[5] This statutory scheme is "sensible and proper" because courts are "not expert on the medical and scientific issues which must be explored in order to produce accurate labeling." *United States v. Diapulse Corporation of America*, 457 F.2d 25, 29 (2d Cir. 1972). If the claimant is unable to obtain FDA approval of its claims, then it may of course seek judicial resolution of the dispute. However, we agree with the Tenth and Ninth Circuits that

> "the supervisory powers committed to the Secretary [of Health, Education and Welfare under Section 334(d)(1)] undoubtedly carry broad authority to determine

---

**3.** 21 U.S.C. § 334(a) provides in pertinent part:
 "(2) The following shall be liable to be proceeded against at any time on libel of information and condemned in any district court * * * within the jurisdiction of which they are found: * * * (D) Any adulterated or misbranded device."

**4.** 21 U.S.C. § 334(d)(1) provides in pertinent part:
 "Any food, drug, device, or cosmetic condemned under this section shall, after entry of decree, be disposed of by destruction or sale as the court may, in accordance with the provisions of this section, direct * * *: *Provided,* That after entry of decree and upon payment of the costs of such proceedings and the execution of a good and sufficient bond conditioned that such article shall not be sold or disposed of contrary to the provisions of this chapter or the laws of any State or Territory in which sold, the court may by order direct that such article be delivered to the owner thereof to be destroyed or brought into compliance with the provisions of this chapter under the supervision of an officer or

employee duly designated by the Secretary [of Health, Education and Welfare], and the expenses of such supervision shall be paid by the person obtaining release of the article under bond. * * *."

**5.** The cases relied on by claimant are not to the contrary. In *Buticaps, Inc. v. United States*, 252 F.2d 634 (D.C.Cir.1958), the court directed the district court to resolve a relabeling dispute that arose when the FDA would not approve the claimant's proposed relabeling because "the terms and conditions are to be fixed by the court and not by the agency." 252 F.2d at 636. However, the proposed relabeling in that case was *initially* submitted for administrative decision. In *United States v. An Article or Device * * * "Hubbard Electrometer,"* 333 F.Supp. 357 (D.D.C.1971), the court found the labeling in issue false and misleading but allowed continued use of the devices by a church under highly restricted conditions on First Amendment grounds, noting that the usual procedure would have been to refer the relabeling proposal to the FDA. 333 F.Supp. at 363–364.

whether and in what manner the labeling may be brought within compliance with the act. The judicial function is concerned with the end product of the labeling process. While the final decision lies with the courts, great weight must be given to the administrative decision." *United States v. Allan Drug Corp.*, 357 F.2d 713, 719 (10th Cir. 1966), certiorari denied, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131.

See also *United States v. 1,638 Cases of Adulterated Alcoholic Beverages*, 624 F.2d 900, 902 (9th Cir. 1980) (quoting and following *Allan Drug, supra*); *United States v. 1,322 Cans * * * Black Raspberry Puree*, 68 F.Supp. 881, 881 (N.D.Ohio 1946).

Here the district court undertook to make an independent *de novo* determination of the validity of claimant's relabeling without first condemning the devices as required by 21 U.S.C. § 334(a) and directing claimant to submit his proposal to the FDA as required by 21 U.S.C. § 334(d)(1).[6] Consequently, the judgments appealed from must be reversed and the consolidated cases remanded for further proceedings consistent with this opinion. If the district court finds that, as the claimant argues, remand to the agency would at this point be pointless, then it may proceed to a determination of whether the agency's refusal to accept relabeling is sustainable under an appropriate standard of judicial review of administrative action.

In both appeals (Nos. 80–1904 and 1905) and in the cross-appeal (No. 80–1939), reversed and remanded, costs to be borne by the respective parties.[7]

---

6. Claimant asserts that it did submit its proposal to Government counsel and that the proposal was rejected. Claimant refers to the fact that Judge Will, after the trial, instructed the parties to attempt to reach agreement on relabeling in accordance with his findings, which they were unable to do. However, there is nothing in the record to show that claimant submitted his claims to the FDA prior to the trial or that the district court instructed him to do so. It is this initial submission to and determination by the agency, subject to review, that the statute requires.

7. Circuit Rule 18 shall apply. The Government's motion to strike portions of claimant's reply brief and Exhibit A thereto is granted. The claimant's motion to lodge illustrated diagrams is denied.