**George SIBLEY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION, Defendant.**

No. 95 C 116.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 21, 1995.

---

George Sibley, Chicago, IL, Pro Se.

Asst. U.S. Atty., Joan Laser, United States Attorney's Office, Chicago, IL, for defendant.

*MEMORANDUM OPINION*
*AND ORDER*

ASPEN, Chief Judge:

After the plaintiff, George Sibley, defaulted on a federally insured student loan, the United States Department of Education undertook to collect the debt by offsetting a portion of Sibley's salary. Sibley unsuccessfully tried to convince the Department that the offset would cause financial hardship, and invoked various administrative proceedings, including two hearings before officials independent of the Department. Now the plaintiff brings this *pro se* action against the Department, alleging that the rejection of his hardship request violated, among other things, the Administrative Procedure Act and various constitutional rights. Presently before this court is the Department's motion for summary judgment. For the reasons set forth below, we grant the motion.

## I. Background

In 1980–81, Sibley borrowed a $9337 student loan from a commercial lender as part of a loan program by which a state agency, the Illinois State Scholarship Commission (ISSC), guaranteed payment to the lender; the federal government in turn guaranteed payment to the ISSC. In 1982, the ISSC reimbursed the lender after Sibley made no payments and defaulted on the loan. Def.'s 12(M) ¶ 2; Pl.'s Resp., Ex. 4. By this time, Sibley was a full-time Internal Revenue Service employee. From 1982 until 1988, the ISSC and Sibley unsuccessfully tried to negotiate a repayment plan. Pl.'s Resp., Exs. 2, 4–14. In July 1988, the Department began its collection efforts by notifying Sibley that, if he and the Department could not agree on a repayment schedule, the Department would "offset" 15% of his "disposable pay"[1] from each paycheck. Def.'s Mot., Ex. 7.

In response, Sibley requested copies of the Department's records regarding the loan, and he received those copies in January 1989. On February 27, 1989, Sibley asked the Department to forego the 15% offset because it would cause "extreme financial hardship," 34 C.F.R. § 31.8(b), and the plaintiff submitted supporting materials to the Department. However, on July 7, 1989, the IRS informed the plaintiff that it had received a notice of offset from the Department, and would soon begin to withhold 15% of Sibley's disposable pay. Pl.'s Resp., Ex. 16. On July 20, Sibley spoke with Juanita Gentry, the chief of research and support in the Department's Chicago Collections Center. Def.'s Mot., Ex. 10. As a result of the conversation, Gentry considered and denied the hardship request on August 1, *id.*, Exs. 11, 12; Gentry Decl. ¶ 5, and then Gentry informed Sibley on August 3 that she had forwarded the documents in support of his hardship request to the Hearings Unit for written review. Def.'s Mot., Exs. 10, 12. Pursuant to 5 U.S.C. § 5514(a)(2) and 34 C.F.R. § 31.7(a), a hearing official independent of the Department was assigned to hear Sibley's request.

On October 23, 1989, the hearing official determined that the 15% offset would not cause extreme financial hardship. On March 1, 1990, the Department sent the hearing official's decision to Sibley and informed him that he should arrange for repayment or else the offset would commence. Pl.'s Resp., Ex. 18. In response, an attorney with the National Treasury Employees Union asserted on Sibley's behalf that the plaintiff had not requested a written hearing, but instead had requested internal consideration of the hardship request; in any event, the Union attor-

---

1. "Disposable pay" comprises that amount of a federal employee's salary remaining after deductions for federal, state, and local taxes, social security taxes, retirement program contributions, and life and health insurance premiums. 34 C.F.R. § 31.2(5); *see also* Def.'s Mot., Ex. 7; Pl.'s Resp., Ex. 16.

ney complained, the Department had also failed to inform Sibley that he could demand an oral hearing. *Id.*, Ex. 14.

Rather than respond to Sibley's letter, the next correspondence from the Department was yet another form letter, sent in November 1993, warning that the Department would initiate offset. Def.'s Mot., Ex. 15. Sibley wrote to the Hearings Unit in Washington, D.C., referring the Unit to the union attorney's letter. *Id.*, Ex. 16. That letter made its way to the Department's Chicago office, and on June 14, 1994, the Department reiterated that its present position was to reject Sibley's hardship request. *Id.*, Ex. 17.[2] Next, the plaintiff wrote another letter, declaring that he "request[ed] an oral hearing" before an independent official, but that he also wanted a "delay in proceedings" in order to submit a hardship request to the Department's regional office. *Id.*, Ex. 18.

Accordingly, the Department informed Sibley of the supporting materials required for regional level review; in response to Sibley's request for an oral hearing, the Department explained that, if the regional office found in Sibley's favor, then the Department would assume that he would forego an oral hearing. *Id.*, Ex. 19. Sibley's next move caused some confusion; he sent the requested materials for regional office review, but also stated that he did not wish to waive the oral hearing. *Id.*, Ex. 20. Apparently believing that even a favorable regional office decision would not appease Sibley, in September 1994, the Department simply referred Sibley's hardship request for oral hearing; unfortunately, the letter informing Sibley of this referral did not clearly explain what happened, although the letter did indicate that additional documents should be sent to the "Hearings Unit." *See id.*, Ex. 21. In any event, Sibley provided further supporting materials in late September 1994.

Next, in a letter dated November 16, 1994, Administrative Law Judge (ALJ) Barbara Lauren of the Merit Systems Protection Board informed Sibley that she had been assigned to conduct the oral hearing. *Id.*, Ex. 23. The ALJ had scheduled the hearing for December 7, and explained that the hearing would be by telephone unless Sibley explained, by November 30, why a face-to-face hearing was necessary and who Sibley would call as witnesses in such a hearing. In addition, the letter explained the regulations that would govern the oral hearing, and detailed the documentation Sibley should provide. The ALJ also requested a telephone number where Sibley could be reached at the scheduled hearing time.

Rather than comply with the ALJ's requests, Sibley expressed confusion to the ALJ, asserting that he was expecting a regional office determination, not an oral hearing. *Id.*, Ex. 24. In addition, Sibley posed ten detailed questions to the ALJ, and also asked for a face-to-face hearing and a continuance until January 7. In response, the ALJ answered the ten questions, moved the hearing to December 12, and refused to hold a face-to-face hearing because Sibley had failed to identify who would testify and why telephonic testimony would be inadequate. *Id.*, Ex 25. Additionally, the ALJ furnished Sibley with a copy of the regulations governing the hearing, 34 C.F.R. part 31. Finally, the ALJ warned Sibley that if he failed to provide a telephone number for the scheduled hearing, the ALJ would render a decision on the written record only.

However, Sibley responded by "refus[ing] to participate in a telephone interview because it violates my statutory right to a face to face hearing," complained that the ALJ inadequately explained the "form and format of the interview," and asserted that the ALJ's refusal to postpone the hearing was "arbitrary and capricious." *Id.*, Ex. 26. The plaintiff requested reassignment to another ALJ. On December 21, 1994, the ALJ denied reassignment, and responded to the

---

**2.** We note that the plaintiff also furnished to the court a copy of the Department's June 14, 1994 letter, but the exhibit differs in minor respects from the Department's copy, *compare* Def.'s Mot., Ex. 17 (abbreviating "apt." in address and placing apartment number on same line as street in address block) *with* Pl.'s Resp. Ex. 19 (spelling out "apartment" on separate line, misspelling "Department" with "Debarment," and containing phrase "record shoo" instead of "records show"). Neither party questions the authenticity of the other's exhibits, so our analysis is unaffected.

plaintiff's complaints. *Id.,* Ex. 27. Next, on December 22, the ALJ issued a fourteen page decision holding that the 15% offset would not cause extreme financial hardship. *Id.,* Ex. 28.

Finally, the plaintiff filed the instant action. From what we can discern, Sibley attacks not only the ultimate decision denying his hardship request, but also contends that he has been denied due process and equal protection of the law, suffered cruel and unusual punishment, and subjugated to slavery under the Thirteenth Amendment. We grant the Department's motion for summary judgment as to all claims.

## II. Standard for Reviewing Motions for Summary Judgment

 Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and.... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Discussion

### A. Extreme Financial Hardship

We first address the merits of the ALJ's rejection of the plaintiff's claim that a 15% offset would cause "extreme financial hardship." 34 C.F.R. § 31.8(b). Section 31.8(b)(1), promulgated pursuant to 5 U.S.C. § 5514(b)(1), explains that an employee would suffer "extreme financial hardship" if the offset "would prevent the employee from meeting the costs necessarily incurred for essential subsistence expenses." Section 31.8(b)(2) in turn defines "essential subsistence expenses" as the costs of "food, housing, clothing, essential transportation and medical care." In addition, a relevant factor in determining the existence of extreme financial hardship is whether the expenses "have been minimized to the greatest extent possible." § 31.8(b)(3)(iii). The employee bears the burden of showing that the offset would cause an extreme financial hardship. § 31.7(e)(2)(ii).

 In reviewing the hearing official's decision rendered pursuant to an informal adjudication,[3] we inquire whether the "agency action, findings, and conclusions" are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *United States v. an Article of Device ... Diapulse,* 768 F.2d 826, 829 (7th Cir.1985). Under this standard,

> the court must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not

---

**3.** Although the Department's regulations provide for many of the trial-type procedures employed in formal adjudications, *compare* 34 C.F.R. §§ 31.5–31.9 *with* 5 U.S.C. §§ 556–57, the Department does not make a written record of the oral hearing, § 31.7(d)(4). We note that the statute granting employees a hearing in order to challenge an offset does not explicitly require a formal adjudication "on the record," *compare* 5 U.S.C. § 5514(a)(2) *with* 5 U.S.C. § 554, and thus the Department could reasonably conclude that an informal adjudication satisfies the statu-tory mandate, *cf. City of West Chicago v. United States Nuclear Regulatory Comm'n,* 701 F.2d 632, 644 (7th Cir.1983) (holding that formal adjudication not required in part because statute did not require hearing "on the record"); *Chemical Waste Management v. EPA,* 873 F.2d 1477, 1482 (D.C.Cir.1989) (according deference under *Chevron USA, Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to agency's reasonable interpretation of statute to require only informal adjudication).

empowered to substitute its judgment for that of the agency.

*Id.* at 830 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)). In addition, we defer to the agency's reasonable interpretations of its own regulations, *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 411–12 (7th Cir.1987), and to the agency's reasonable application of the facts to a legal standard, *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) (citing *Chevron USA, Inc. v. NRDC*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

■ We hold that the ALJ's factual findings were not arbitrary and capricious, and that the ALJ reasonably concluded that Sibley could endure the offset without suffering extreme financial hardship.[4] To start, the plaintiff's pay statements reflected an annual gross salary of $48,109; minus applicable deductions, 34 C.F.R. § 31.2(5), the plaintiff reaped a monthly "disposable pay" of $2526. Sibley contended that his monthly essential subsistence expenses totalled $2457, leaving $69 per month available to repay the student loan.

However, the ALJ properly discounted several of Sibley's expenses.[5] First, Sibley claimed to spend—as an unmarried person living alone—$525 per month on food, but failed to provide medical records in support of his proffered reason, namely, that he must eat four times a day at restaurants. Def.'s Mot., Exs. 9, 22. In the absence of any proof, Sibley failed to carry his burden in front of the ALJ, and the ALJ (generously) reduced his monthly food expense to $300. Next, Sibley asserted that his "essential transportation" expenses, 34 C.F.R. § 31.8(b)(2), totalled $90 per month: $72 for commuting to and from work on public transportation, and $18 in other "work related travel." Def.'s Mot., Ex. 22. Again, Sibley failed to provide any proof of the expenses, particularly the "work related travel," and

the ALJ correctly rejected the $18 expense. Finally, the plaintiff listed $657 in monthly medical expenses: $377 for medication, $140 for physical therapy, $50 for dental care, and $90 in "clinic costs." Def.'s Mot., Ex. 21. However, as the ALJ pointed out, the medication receipts submitted by Sibley total only $331.11, not $377; worse, the receipts are not even from the same month. *Id.*, Ex. 22. In addition, the ALJ recognized that Sibley provided no invoices for dental treatments, and emphasized that the plaintiff failed to prove the extent to which his health insurance covered the medical expenses. Notwithstanding the plaintiff's failure to prove up his claimed medical expenses, the ALJ still allowed $500 per month for that category. Finally, the ALJ properly disallowed Sibley's claim for a $60 monthly "[c]harge cards" expense because he failed to show that the charges were incurred for essential subsistence expenses. After accounting for the discounts, Sibley has $529, not $69, remaining each month after expenses; because a 15% offset of his disposable pay is $378.90, the ALJ concluded that Sibley would suffer no extreme financial hardship. In light of the agency's well-supported factual findings and well-reasoned conclusion, we uphold the agency's determination.

## B. Department Procedure

■ In addition to attacking the Department's decision on the merits, the plaintiff contends that the agency acted arbitrarily and capriciously with regard to certain procedures. First, Sibley points to the July 7, 1989 IRS letter informing him that the Department had requested offset to commence, and complains that the Department made the request even though Sibley had applied for hardship in February 1989. However, as we described *supra* Part I, upon learning of the pending request, the Department promptly stayed the offset, considered and rejected the application internally, and then forwarded the application for a written hearing. No

---

4. Indeed, even if we examined the Department's decision *de novo*, we would reach the same conclusions as that expressed in the ALJ's thorough analysis.

5. Indeed, the ALJ beneficently accepted without discount Sibley's monthly rent of $855, and personal expenses of $100 even though Sibley failed to specify how much was incurred for clothing, 34 C.F.R. § 31.8(b)(2).

dollars were offset at that time; indeed, to date the offset has still not begun. We see no basis for setting aside the Department's final determination, rendered years later, merely because the Department prematurely requested offset and then quickly corrected itself.

■ Similarly, we reject the plaintiff's reliance on the Department's purported failures to internally consider his hardship requests. Based on the record before us, the Department did in fact consider the hardship request, first on August 1989, and again later when it adhered to the first decision in June 1994. Def.'s Mot., Exs. 10, 17. Moreover, the absence of a *third* internal consideration prior to forwarding the case for an oral hearing was the result of a miscommunication; the Department believed that Sibley would invoke an oral hearing even if he won internally. *Id.*, Ex. 21. We cannot characterize the agency's actions as arbitrary and capricious.

■ Finally, we reject the plaintiff's arguments that the ALJ acted arbitrarily and capriciously by denying a one-month continuance of the oral hearing and by denying a face-to-face hearing. The ALJ's November 16 letter notified Sibley that the hearing would take place on December 7; the ALJ later reset the date to December 12, almost four weeks after the original notice. By late 1994, Sibley had already proffered numerous submissions during the six-year history of the Department's collection efforts. In light of these facts, and given the time the ALJ provided to Sibley to submit even more materials, the denial of the continuance was not arbitrary and capricious. Nor was the denial of a face-to-face hearing; the applicable regulations provide for telephonic testimony if the employee is located outside the Washington, D.C. area, or simply at the discretion of the hearing official. 34 C.F.R.

§ 31.7(b)(3)(i), (iii). In the instant case, the ALJ gave Sibley the opportunity to explain why a face-to-face hearing was required, but Sibley failed to provide any reasons at all. Accordingly, we hold that the ALJ's procedural decisions were not arbitrary and capricious.[6]

### C. Statute of Limitations

■ Sibley next asserts that the Department's attempt to collect his debt by offset is barred by the statute of limitations. We observe first that, even according to Sibley's position that a ten-year limitations period applies to initiation of offset proceedings, and thus the period expired May 15, 1992, Compl. ¶ 35, the Department timely sent Sibley its first notice of offset in July 1988.

■ More importantly, however, Congress repealed all limitations periods previously applicable to a "suit ..., offset, garnishment, or other action initiated or taken" by the Department for repayment of federally insured student loans. Higher Education Technical Amendments (HETA) of 1991, Pub.L. 102–26, § 3(a), 105 Stat. 123, 124 (codified at 20 U.S.C. § 1091a(a)(2)(D)). And the repeal applies retroactively to *all* such loans. HETA, § 3(b), (c), 105 Stat. 123, 125; *United States v. Glockson*, 998 F.2d 896, 897 (11th Cir.1993); *see also United States v. Phillips*, 20 F.3d 1005, 1007 (9th Cir.1994) (per curiam) (collecting cases). Although Sibley complains that the repeal violates due process, Compl. ¶ 36, retroactive repeal of a limitations period applicable to monetary debts does not violate due process. *United States v. Hodges*, 999 F.2d 341, 342 (8th Cir.1993) (citing *Campbell v. Holt*, 115 U.S. 620, 628–29, 6 S.Ct. 209, 213–14, 29 L.Ed. 483 (1885)). Statutes of limitations are legislatively created defenses, not constitutionally protected "property," and thus are subject to

---

**6.** To the extent that the plaintiff argues that he was denied procedural due process, we hold otherwise. Under the three factor test used to evaluate the necessity of additional procedures, *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), Sibley received all the process he was due. Both the government's and Sibley's interests are weighty, and the hearing procedures offered here more than adequately protected those interests. A face-to-face hearing was unnecessary to achieve an accurate decision where the plaintiff failed to identify witnesses who would testify, and the one-month continuance would not have contributed sufficiently to accuracy in light of Sibley's numerous chances—of which he took advantage—to submit supporting materials.

legislative amendments, including retroactive repeals. *See id.* at 628, 6 S.Ct. at 213.[7]

### D. Equal Protection of the Law

 Read liberally, the plaintiff also complains that the statutory provision permitting the Department to collect the debt of federal employees via an offset, 5 U.S.C. § 5514, violates his right to equal protection of the law, presumably under the equal protection component of the Fifth Amendment applied to the federal government. *Wayte v. United States,* 470 U.S. 598, 610 n. 9, 105 S.Ct. 1524, 1532 n. 9, 84 L.Ed.2d 547 (1985) (citing *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)). A classification based on federal employee-status bears none of the hallmarks of classifications subject to heightened review, *see City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985), and thus we review § 5514 for rationality only. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992) (explaining that where heightened review is inapplicable, Equal Protection Clause requires only that the classification rationally further legitimate government interest). We conclude that the collection of funds owed to the federal government is a legitimate purpose, and that salary offsets—a remedy particularly available when deducting from the federal government's own paychecks—constitute a rational manner to effectuate the government purpose.

### E. Laches

 Finally, Sibley argues that laches prevents the Department from attempting to collect repayment. This equitable defense is not necessarily applicable to the federal government, *Martin v. Consultants & Admins.,*

*Inc.,* 966 F.2d 1078, 1090 (7th Cir.1992) (citing *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940)), but Sibley appears to also contend that, through subrogation, the Department received only the lender's and the state agency's rights to collect; presumably, Sibley argues, if laches applied against the lender and the state agency, then the doctrine would also apply against the Department. Traditional rules of subrogation, however, also do not necessarily apply against the federal government, *United States v. California,* 507 U.S. 746, 755–759, 113 S.Ct. 1784, 1790–91, 123 L.Ed.2d 528 (1993); even if subrogation applies here, we reject Sibley's reliance on laches for two reasons.

 First, Sibley has yet to raise this defense in the administrative proceedings, and thus we deem the argument waived in this suit. *See Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Board,* 957 F.2d 302, 303 (7th Cir.1992) (citing *Arch Mineral Corp. v. Director,* 798 F.2d 215, 220 (7th Cir.1986)). Second, were we to consider the merits of the laches defense, we would decline to impose the equitable doctrine here. Courts are wary of permitting the defense where the action was brought within an express statute of limitations period, and additionally, the facts here present neither an unreasonable delay by the Department nor harm or prejudice to Sibley caused by the passage of time. *Consultants & Admins., Inc.,* 966 F.2d at 1091. Accordingly, we hold that laches did not bar the Department's proceedings.

### III. Conclusion

For the reasons set forth above, we conclude that there exists no basis to set aside the agency's decision.[8] Therefore, we enter

---

7. To the extent that the plaintiff claims that the limitations period repeal violates his substantive due process rights, *see* Compl. ¶ 36, we reject that argument. *See Planned Parenthood of Southeastern Penn. v. Casey,* 505 U.S. 833, 845–49, 851–52, 112 S.Ct. 2791, 2804–05, 2807, 120 L.Ed.2d 674 (1992) (explaining the fundamental rights to which the Court has applied the substantive component of due process).

8. Apparently, Sibley also argues that the agency's decision somehow constitutes cruel and unusual punishment under the Eighth Amendment and subjects him to slavery under the Thirteenth Amendment. We find these claims patently meritless. In the absence of an adjudication, the Eighth Amendment is inapplicable; rather, the Due Process Clause provides the applicable protection, *Bell v. Wolfish,* 441 U.S. 520, 537 n. 16, 99 S.Ct. 1861, 1873 n. 16, 60 L.Ed.2d 447 (1979), and we have already rejected Sibley's due

summary judgment for the defendant. It is so ordered.

process claims. And the "involuntary servitude" prohibited by the Thirteenth Amendment generally protects against labor compelled by "the use or threatened use of physical or legal coercion"; the salary offset does not in any way compel Sibley to work for the government. *See United States v. Kozminski,* 487 U.S. 931, 945, 108 S.Ct. 2751, 2761, 101 L.Ed.2d 788 (1988).