**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**DIAPULSE CORPORATION OF AMER-
ICA, also known as the Diapulse Manu-
facturing Corporation of America, a cor-
poration, Defendant-Appellant.**

No. 507, Docket 71–2136.

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1972.

Decided March 20, 1972.

Milton A. Bass, Bass & Ullman, New York City, for appellant.

Cyril Hyman, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., Alvin L. Gottlieb, Deputy Asst. Gen. Counsel, Food, Drugs and Environmental Health Div., Joanne S. Sisk and Forrest T. Patterson, Attys., Dept. of Health, Education and Welfare, Rockville, Md., of counsel), for appellee.

Before SMITH, FEINBERG and MULLIGAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Diapulse Corporation of America has been prohibited from shipping in interstate commerce the "Diapulse," a pulsed high frequency generator similar to a conventional diathermy unit but with a lower output, intended to create a unique athermal effect, until the labeling meets the standards of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. to the satisfaction of the Food and Drug Administration (FDA). Judge George Rosling of the United States District Court for the Eastern District of New York granted the government's motion for preliminary injunction against shipment of the device on the basis of testimony received in this proceeding and findings in earlier litigation condemning the machine as misbranded. Diapulse appeals. We affirm the judgment of the district court.

Related litigation arising from the marketing of this machine began six years ago. A condemnation action against a Diapulse machine was tried before a jury in Connecticut under 21 U.S.C. § 334. The issue was whether the labeling trumpeting the machine's effectiveness in the cure of 121 "specific" human ailments was false or mis-

leading, making the machine misbranded under 21 U.S.C. §§ 352(a), 331(a). The jury returned a general verdict of mislabeling and in addition marked 49 of the claims as specifically misleading. The court instructed the jury that they were not required to pass on all claims; lack of a mark was not an indication that they considered any given claim true.[1]

The Diapulse was condemned as misbranded. Defendant did not take advantage of the opportunity granted to redeem the device by bringing it into compliance with the Food, Drug, and Cosmetic Act (the Act) with guidance from the FDA.[2] In April 1968, the government began this action for injunctive relief under the Act because of alleged continuing violations of the Connecticut judgment.[3] With Diapulse's consent, a preliminary injunction was entered prohibiting the interstate shipment of the device accompanied by claims on the 49 maladies marked by the Connecticut jury.[4] Active prosecution was suspended to allow the company time to submit evidence of effectiveness to the FDA; such was not forthcoming, and after discovery proceedings and much unexplained delay, the case was

heard in the fall of 1971. After hearing the bulk of the evidence, the court granted the government's motion for a preliminary injunction against shipment until the labeling was made acceptable under the statute. The trial judge based his conclusions on the fact that the condemned machine differed in detail only from later machines being marketed; that the device was still misbranded under the Connecticut judgment; and that the company had not corrected its earlier material, revealed that medical opinion differed sharply on the therapeutic value of the machine, or altered its advertising and labeling in more than an insignificant way.

■ Appellant first argues that the court did not consider the correct factors in making the decision on the preliminary injunction. To support this contention it cites numerous cases between private parties. But the function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants. The Food, Drug, and Cosmetic Act has

---

1. The findings on specific claims were elicited in response to interrogatories to the jury, as permitted by Rule 49(b) of the Federal Rules of Civil Procedure. The court's instruction that the jury did not have to consider all the claims separately was approved by this court on appeal. United States v. Diapulse Manufacturing Corp. of America, 389 F.2d 612 (2d Cir.), cert. denied, An Article of Device . . . Diapulse Mfg. Corp. of America v. United States, 392 U.S. 907, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968). For more detail on the factual background, see that opinion, and United States v. Diapulse Manufacturing Corp. of America, 269 F.Supp. 162 (D.Conn.1967).

2. Diapulse claims that the FDA refused to cooperate or consider its impressive evidence; a review of the relevant papers indicates that the FDA would not accept clinical observations as the equivalent of reliable studies of the device's functioning and effectiveness, and that it was justified in that conclusion.

3. Seizure actions are *res judicata* and affect the article wherever it is introduced into interstate commerce in violation of the statute. United States v. 216 Bottles, More or Less, Sudden Change, 36 F.R.D. 695 (E.D.N.Y.1965). And the adjudication in an *in rem* action is *res judicata* in an injunction suit. United States v. Nysco Laboratories, 318 F.2d 817 (2d Cir. 1963).

4. As the court below noted, barred as the company was from claiming that the device worked by "stimulating tissue responses and the natural defense mechanisms of the body," "perking up sick and run-down cells of the body with new life and fresh vigor," or that it cured, among other ills, "systemic infections," "abdominal pain and tenderness," "hypertension," and "adrenal malfunctions," it must have known it was violating the Connecticut decision with its continued use of labeling which promised aid in the cure of any human disease, much less the 72 ailments it specifically mentioned.

as its purpose the protection of the public from products not proven to be safe and effective for their alleged uses and the safeguarding of the public health by enforcement of certain standards of purity and effectiveness. The reach of the Act is broad and the provisions, touching the public interest in a direct way, are to be given a liberal construction. United States v. An Article of Drug . . . Bacto-Unidisk, 394 U.S. 784, 798, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969); United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 (1948); Pasadena Research Laboratories v. United States, 169 F.2d 375 (9th Cir.), cert. denied, 335 U.S. 853, 69 S. Ct. 83, 93 L.Ed. 401 (1948); United States v. 250 Jars, etc. of United States Fancy Pure Honey, 218 F.Supp. 208 (E. D.Mich. 1963). As the Supreme Court said in United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943):

> The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation if it is to be treated as a working instrument of government and not merely as a collection of English words. [320 U.S. at 280, 64 S.Ct. at 136]

 The passage of the statute is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained. See United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940). The district courts are given jurisdiction to restrain violations of the statute (21 U.S.C. §

332(a)); the legislative goals are the framework within which the court operates in deciding whether to grant injunctive relief. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). No specific or immediate showing of the precise way in which violation of the law will result in public harm is required. Shafer v. United States, 229 F.2d 124 (4th Cir.), cert. denied, 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460 (1956); Walling v. Brooklyn Braid Co., 152 F.2d 938 (2d Cir. 1945); United States v. Ingersoll-Rand Co., 218 F. Supp. 530 (W.D.Pa.), aff'd 320 F.2d 509 (3d Cir. 1963). Thus, Diapulse's claim that a removal from commerce is not justified because there was no showing of irreparable injury or proof that the machine was unsafe is beside the point.[5] In any case, the company's perspective in defining "unsafe" or "injury" is too narrow. As the court said in reviewing the labeling of a product called Mucorhicin in United States v. Nutrition Service, Inc., 227 F.Supp. 375 (W.D.Pa. 1964), aff'd 347 F.2d 233 (3d Cir. 1965):

> [T]hat does not mean that because such evidence [of unsafeness] has not been introduced, that the hope held out by the producers of Mucorhicin to the medically aidable patients may not induce them to delay medical treatment by competent doctors to the extent that they become less capable or incapable of being aided, and so cause irreparable public injury. . . . Congress intended that all persons in the national domain be protected against any such injury. . . . [227 F.Supp. at 388]

 The other major consideration in the trial court's exercise of discretion is the likelihood of continuing vio-

---

5. Nor is there any validity to the company's claim that the injunction provision was meant to be used only in emergencies. On the contrary, the legislative history indicates that the seizure provisions were intended for use in such situations, and the injunction section was to be utilized "in border-line cases that cannot be settled without litigation." H.R.Rep.No.2139, 75th Cong., 2d Sess. 3 (1938). It was intended for cases such as the present one, in which the manufacturer refused to remove from circulation labeling found to be false and misleading.

lation or recommencement of the offensive behavior, if it has ceased during the pendency of the litigation. "The matter is in the broadest sense for the discretion of the trial court which is best qualified to form a judgment as to the likelihood of a repetition of the offense . . . '[H]is discretion is necessarily broad and a strong showing of abuse must be made to reverse it.' United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L. Ed. 1303." United States v. Article of Drug . . . Designated . . . B-Complex Cholinos Capsules, 362 F.2d 923, 928 (3d Cir. 1966); *see* United States v. Nysco Laboratories, Inc., 215 F.Supp. 87 (E.D.N.Y.), aff'd 318 F.2d 817 (2d Cir. 1963). The injunction may sweep broadly in its prohibition if that is necessary to enjoin future violations which appear likely to occur. May Dept. Stores Co. v. NLRB, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945); United States v. Nysco Laboratories, Inc., *supra*. Nor can appellant complain that the injunction is impermissible because it will put him out of business. He "can have no vested interest in a business activity found to be illegal. It has long been settled that the [Food and Drug] Act itself is a constitutional exercise of the commerce power. United States v. Walsh, 331 U.S. 432, 67 S.Ct. 1283, 91 L.Ed. 1585 (1947)." United States v. Ellis Research Laboratories, Inc., 300 F.2d 550, 554 (7th Cir. 1962).

■ A consideration of the facts in this case in light of the above leads to the inescapable conclusion that the issuance of the injunction was warranted. The device had been found to be generally misbranded, in violation of the statute, and in addition, a jury of laymen had found 49 specific claims to be false or misleading. Yet the company continued its brazen advertising scheme, failing to inform its buyers and lessors of the litigation or of the dispute in medical circles about the machine's efficacy. It did not prove the machine's effectiveness or relabel it to the FDA's satisfaction. The company's persistence in marketing the device makes it highly likely that the prohibited activity will cease only on the issuance of a blanket prohibition on shipment.

Taking into account the fact that a final decision on the merits after a full trial would have to await transcripts and would therefore not be forthcoming in the near future, the district court concluded that it was necessary to take appellant's "welter of intermingled true, half-true, and false promotional material out of the mainstream of medicine." We agree that the action was justifiable and was not an abuse of discretion.

■ The court's order listed as a condition for the lifting of the injunction approval by the FDA of labeling for the machine seized in the *in rem* action. Diapulse claims that this imposes a requirement of "pre-clearance" of the device with the FDA and that such pre-clearance is not required under the law before a device can be manufactured and shipped. The circumstances of this litigation make analogy to pre-clearance less than persuasive. Diapulse is not attempting to market the machine for the first time; on the contrary, a machine differing only in detail from present models has been condemned because the labeling was false and misleading. Corrective measures are required before the machine can be shipped in commerce. The court below found, following the order in the Connecticut action, that the FDA, the administrative agency charged with implementation of the statute which the company was found to be violating, was the best qualified to assess and formulate, with the company, labeling that is not false or misleading. The court itself is not expert on the medical and scientific issues which must be explored in order to produce accurate labeling; the assignment of that function to the FDA is sensible and proper. Cf. United States v. Allan Drug Co., 357 F.2d 713 (10th

Cir. 1966).[6] The order does not leave the company in doubt about what acts are prohibited or the methods by which it can proceed to correct its violations.

Appellant's last claim is that the district court was biased and improperly assessed the credibility of its witnesses and the value of its device. The court was certainly harsh in his assessment of the appellant's witnesses. He informed counsel that he did not give much credence to testimony based solely on clinical experience with a device that was a substantial investment for a practitioner; he felt that there was a human tendency to persuade oneself in such a situation that the investment was worthwhile. He stated in no uncertain terms that he did not credit highly the testimony by doctors or researchers who had been paid, or whose affiliated colleges had been paid, with Diapulse stock. The court suggested that the witnesses were only repeating the testimony they had given in Connecticut years before and he questioned the application of the term "expert" to them.

None of these conclusions, in itself, goes beyond what is proper for a trial judge when he is sitting without a jury. We must give "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), Fed.R. Civ.P. It is his duty to appraise the testimony and demeanor of the witnesses. United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952); Omega Importing Corp. v. Petri-Kine Camera Company, Inc., 451 F.2d 1190, 1197 (2d Cir. 1971); Anderson v. Federal Cartridge Corp., 156 F.2d 681 (8th Cir. 1946). The manner in which the court presented his observations, however, was quite abrasive. His disparaging comments were often made directly to the witnesses, and

lacked the restraint a trial judge ought ideally to show, no matter what he thinks of the value of the testimony.

The court was not unprovoked, however. Diapulse was presenting highly repetitious testimony; no significant evidence had been developed since the Connecticut trial, and the company apparently refused to believe that the latter had *res judicata* effect. And the "studies" Diapulse relied on were merely clinical observations, not double blind tests done under controlled conditions with accurate record keeping. The court, however, might well have held these opinions and expedited the presentation of testimony without being so caustic to the parties appearing before him.

Despite the comments of the court, we do not find bias or denial of a fair hearing. Appellant does not allege or show any extra-judicial source of bias, and that is essential to sustain a charge of bias in this circuit. Wolfson v. Palmieri, 396 F.2d 121, 124 (2d Cir. 1968). And the alleged "prejudgment" of the case was no more than the court's statements, at the time of decision on the preliminary injunction, about his conclusions based on the evidence he had received at that time, and essential to his decision on preliminary relief. The court did make one remark apparently inconsistent with his declarations of openmindedness on the ultimate issues in the case. In his opinion he described the Diapulse machine once as "nontherapeutic;" appellant claims that he had decided that Diapulse could never be relabeled as it was not therapeutic at all. The remark in the opinion is ambiguous; it may have referred only to its efficacy in light of the claims then being made for it, for other parts of the opinion and his comments during the trial clearly indicate that he had not prejudged this or the other issues remaining in the litigation.

---

6. *See* United States v. Sars of Louisiana, Inc., 324 F.Supp. 307 (E.D.La.1971), in which the court found that compliance with recommendations made by FDA inspectors to the defendant removed the necessity for issuance of an injunction against shipment of products produced at his plant.

We conclude that the court applied the proper standard for issuance of a preliminary injunction authorized by this statute, that the facts amply warranted the order of cessation of appellant's illegal practices until the labeling was corrected, and that the court, although perhaps overly abrasive, did not deny appellant a fair hearing or act on the basis of bias or improper motives.

We have considered appellant's other contentions and find no merit therein.

Judgment affirmed.