UNITED STATES of America/FEDER-AL COMMUNICATIONS COM-MISSION, Plaintiff,

v.

WATERBURY HISPANIC COMMU-NICATIONS, INC. and Efrain Gonzalez, Defendants.

No. Civ. 3:99CV1611(PCD).

United States District Court, D. Connecticut.

Nov. 9, 1999.

Alan M. Soloway, U.S. Attorney's Office, New Haven, CT, for plaintiff.

James W. Cummings, Moynahan, Ruskin, Mascolo & Minnella, Waterbury, CT, Patrick M. Edwards, Detroit, MI, for defendants.

*RULING ON PENDING MOTIONS*

DORSEY, Senior District Judge.

Plaintiff moves for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a)(1) to prevent defendants from continued operation of an unlicensed radio station. Defendants move for summary judgment and declaration that 47 C.F.R. § 73.512(c) is a violation of the First Amendment and the Religious Freedom Restoration Act ("RFRA").

I. BACKGROUND

Defendant Waterbury Hispanic Communications, Inc. ("WHC") is a non-profit corporation with a religious mission. Defendant Gonzalez works with WHC to provide religious and community service radio broadcasts to its Spanish-speaking audience.

WHC began broadcasting at 87.9 MHz on October 1, 1998. It claims to operate at a power level of less than 100 watts. By letter dated March 31, 1999, Federal Com-

munications Commission ("FCC") New England District Director Vincent Kajunski warned defendants that their station was operating in violation of 47 U.S.C. § 301 since the station was neither licensed nor within a licensing exception. At that frequency, low power unlicensed transmittors may operate at a field strength not to exceed 100 microvolts/meter. 47 C.F.R. § 15.209(a). Defendants' operation measured 46,000 microvolts/meter at approximately 200 feet.

Defendants' counsel responded to the letter, informing Kajunski that WHC would be switching to 88.5 MHz and continuing to broadcast because of their belief that

> WHC retains a First Amendment right to broadcast under 100 watts of power when 47 CFR 512(c) unconstitutionally prohibits all Class D micro broadcasts, and when the FCC refuses to waive license requirements for micro broadcasters (47 CFR 1.3), or to consider a petition to reconsider rules considering micro broadcasters (47 CFR 1.106).

Defendants never applied for a permit, requested a waiver, or petitioned the FCC to reconsider any rules. They claim that any referral or appeal to the FCC would be futile because the FCC 1) no longer issues new licenses for micro broadcast stations pursuant to 47 C.F.R. § 73.512(c); and 2) has ruled in several proceedings that the micro broadcasting regulation, 47 C.F.R. § 73.512(c), does not violate the First Amendment.

## II. DISCUSSION

### A. *Jurisdiction*

■ Plaintiff asserts jurisdiction under 47 U.S.C. § 401(a). Defendants claim that § 401(a) does not give the Court jurisdiction to grant injunctive relief against private parties.

Section 401(a) provides that:

The district courts of the United States shall have jurisdiction, upon application of the Attorney General of the United States at the request of the Commission, alleging a failure to comply with or a violation of any of the provisions of this chapter by any person, to issue a writ or writs of mandamus commanding such person to comply with the provisions of this chapter.

The phrase "writ or writs of mandamus" has been interpreted to include injunctions against persons alleged to be violating the Federal Communications Act of 1934 (the "Act"). *See Free Speech v. Reno*, No. 98CIV2680 (MBM), 1999 WL 147743, at *2 (S.D.N.Y. Mar.18, 1999); *see also United States v. Medina*, 718 F.Supp. 928, 930 n. 6 (S.D.Fla.1989).

' The Court has jurisdiction to issue an injunction.

### B. *Standing*

Plaintiff claims that defendants lack standing to challenge the constitutionality of the FCC regulatory scheme. Defendants argue that, as defendants, they necessarily have standing to assert their constitutional claim as a defense.

Article III of the Constitution limits federal jurisdiction to cases and controversies. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and consists of three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*See id.* at 560–61, 112 S.Ct. 2130.

The standing requirement has been relaxed in First Amendment cases such that persons can facially attack statutes without

a clear showing of injury. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). For example, a person can attack a permit scheme without first applying for and being denied a permit where the scheme "pose[s] a real and substantial threat of ... censorship risks." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–60, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). These facial challenges are permitted to protect against prior restraints on First Amendment speech. *See id.* at 757, 108 S.Ct. 2138; *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

▆ In the instant case, defendants have not suffered a concrete, particularized, actual injury since they never applied for a permit or a waiver and they broadcast despite being unlicensed. *See United States v. All Radio Station Transmission Equip.*, 29 F.Supp.2d. 393, 397 (E.D.Mich. 1998); *United States v. Dunifer*, 997 F.Supp. 1235, 1240 (N.D.Cal.1998). Moreover, there is no basis for dispensing with the injury requirement because there is no First Amendment right to broadcast on the radio. *See Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 388–89, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) ("Where there are substantially more individuals who want to broadcast than there are frequencies to allocate, it is idle to posit an unabridgeable First Amendment right to broadcast comparable to the right of every individual to speak, write, or publish."); *see also FCC v. National Citizens Comm. for Broad.*, 436 U.S. 775, 799, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978).

▆ Defendants argue that they have standing to assert their constitutional claims by virtue of the fact that they are defendants. It is true that the standing doctrine generally applies to the plaintiff. However, defendants' status does not create jurisdiction where it would not exist were they plaintiffs. Here they are affirmatively seeking declaratory relief from the enforcement of 47 C.F.R. § 73.512(c)[1] —a request that the Court does not have jurisdiction to entertain pursuant to the administrative scheme.

Section 401 grants jurisdiction to District Courts to enforce FCC orders. However, "[a]ny proceeding to enjoin, set aside, annul, or suspend" an FCC order or decision must follow the procedure prescribed in chapter 158 of Title 28, which vests jurisdiction exclusively with the Court of Appeals. 47 U.S.C. § 402(a); 28 U.S.C. § 2342. In the instant case, there is no FCC order or decision in question. Defendants argue that it would have been futile to seek administrative relief because the FCC has repeatedly ruled that the regulation does not violate the First Amendment. Futility, however, does not create jurisdiction where Congress clearly vested it in the Courts of Appeals.

Moreover, the constitutionality of this regulation has no bearing on whether a preliminary injunction should issue. Even if this regulation were unconstitutional, defendants would still be operating without a license, which is prohibited under 47 U.S.C. § 301.

Defendants lack standing to challenge the constitutionality of 47 C.F.R. § 73.512(c).

### C. *Preliminary Injunction*

▆ Generally, a party seeking a preliminary injunction must demonstrate: (1) a threat of irreparable harm and (2) either (a) a likelihood of success on the merits or (b) serious questions going to the merits

---

1. 47 C.F.R. § 73.512(c) states that: "Except in Alaska, no new Class D applications nor major change applications by existing Class D stations are acceptable for filing except by existing Class D stations seeking to change frequency. Upon the grant of such applica-tion, the station shall become a Class D (secondary) station." Class D licenses had previously been allocated to micro broadcast stations that operated at low power levels and whose signals did not extend beyond a certain distance.

and the balance of hardships tipping decidedly in its favor. *See Fisher–Price, Inc. v. Well–Made Toy Manuf. Corp.*, 25 F.3d 119, 122 (2d Cir.1994). However, "the function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the Court when weighing claims of two private litigants." *United States v. Diapulse Corp.*, 457 F.2d 25, 27 (2d Cir.1972). "Where, as here, the statute was enacted to protect the public interest and itself authorizes injunctive relief, '[t]he passage of the statute is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained.'" *Medina*, 718 F.Supp. at 930 (citing *Diapulse*, 457 F.2d at 28).

Thus, for an injunction to issue under § 401(a), the government need not show irreparable harm, nor must the Court balance the interests of the parties. The government must only demonstrate that defendants violated the statute and there is "'some cognizable danger of recurrent violation.'" *United States v. Sene X Eleemosynary Corp.*, 479 F.Supp. 970, 981 (S.D.Fla.1979) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). *See also Medina*, 718 F.Supp. at 930.

Here, defendants violated § 301 of the Act by operating neither with a license nor within a licensing exception. There is a clear danger that they will continue to violate the statute, as evidenced by the response letter to Kajunski, which stated that defendants would continue to broadcast. Accordingly, a preliminary injunction will enter enjoining defendants, their agents, servants, and employees, and all other persons in active concert or participation with them, from any unauthorized radio operation.

## III. CONCLUSION

Plaintiff's motion for a preliminary injunction (doc. 6) is **granted.** Defendants' motion for summary judgment (doc. 12) is **denied.**

SO ORDERED.