UNITED STATES of America,
Plaintiff,

v.

AMERICAN THERAPEUTIC
CORPORATION, et al.,
Defendants.

Case No. 10–23765–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 28, 2011.

Joyce R. Branda, United States Department of Justice, Washington, DC, Theodore L. Radway, U.S. Attorney's Office, Miami, FL, for Plaintiff.

Alvin Ernest Entin, Entin & Della Fera, Fort Lauderdale, FL, Lawrence Richard Metsch, Metsch & Metsch, Aventura, FL, Arthur W. Tifford, Barry Michael Wax Law Offices of Barry M. Wax, Miami, FL, for Defendants.

## AMENDED [1] ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTIONS TO DISSOLVE THE TEMPORARY RESTRAINING ORDER

JOSE L. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon the United States's Motion for Preliminary Injunction (D.E. No. 3), Intervenor Hector Negron's Motion to Dissolve or Modify Temporary Restraining Order (D.E. No. 34), and Defendant Judith Negron's Motion to Dissolve or Modify Temporary Restraining Order or Alternatively, for Release of Funds for Attorney's Fees and Costs of Defense. The United States has filed a complaint, alleging that Defendants committed a Federal health care offense, as defined in 18 U.S.C. § 24, by attempting to execute and actually executing a scheme or artifice to defraud a health care benefit program, namely Medicare, in connection with the delivery of or payment for health care benefits, items, or services, in violation of 18 U.S.C. § 1347. The Court has taken judicial notice of the indictment filed in this Court against Defen-

---

1. This order has been amended to correct two typographical errors. First, on page 5, the Court corrected its statement that the government has been able to locate a large portion of the medicare fraud proceeds to correctly state that the Government has been unable to locate a large portion of the medicare fraud proceeds. On page 6, the Court corrected its statement that ATC and ASI were established and operated in the names of Valera and Negron to hide the involvement of Negron to correctly read that these corporations were established and operated in the names of Valera and Negron to hide the involvement of Duran.

dants Duran, Valera, Negron, Acevedo, ATC, and MedLink, in *United States v. Duran, et al.*, No. 10–20767–CR–King.

The Court has already entered a Temporary Restraining Order against all Defendants. *See* (D.E. No. 10).[2] A default preliminary injunction has been entered against the corporate defendants. *See* (D.E. No. 28).[3] In addition, the parties stipulated to the entry of a preliminary injunction against Defendant Margarita Acevedo. *See* (D.E. No. 43). Thus, the motion for a preliminary injunction remains pending against Defendants Lawrence Duran, Marianella Valera, and Judith Negron ("Defendant Negron") (collectively "Defendants").

On January 11, 2011, the Court held an evidentiary hearing on the motion for a preliminary injunction, Intervenor Hector Negron's ("Intervenor Negron") motion to dissolve the temporary restraining order, and Defendant Negron's motion to dissolve the temporary restraining order or alternatively for release of funds. After careful consideration and for the reasons set forth below, the Court grants the United States's Motion for Preliminary Injunction and denies Intervenor Negron's motion and Defendant Negron's motion.

## I. Motion for Preliminary Injunction

Plaintiff seeks to enjoin Defendants' fraudulent activities and to enjoin the dissipation of assets. Specifically, Plaintiff seeks this injunction under 18 U.S.C. § 1345(a)(1), which provides that where a person is "committing or about to commit a Federal health care offense ... the Attorney General may commence a civil action ... to enjoin such violation," and under 18 U.S.C. § 1345(a)(2), which provides

that "[i]f a person is alienating or disposing of property or intends to alienate or dispose of property, obtained as a result of ... a Federal health care offense or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal Court ... to enjoin such alienation or disposition of property."

"Traditionally, to receive injunctive relief, the moving party must demonstrate (1) likelihood of success on the merits, (2) threat of immediate irreparable harm, (3) that the balance of hardships and the public interest are in his favor." *United States v. Medina*, 718 F.Supp. 928, 930 (S.D.Fla.1989). However, here, the conduct at issue is prohibited by statute. "Where ... the statute was enacted to protect the public interest and itself authorizes injunctive relief, '[t]he passage of the statute is in a sense, an implied finding that violations will harm the public and ought, if necessary to be restrained.'" *Id.* (quoting *United States v. Diapulse Corp.*, 457 F.2d 25, 27 (2d Cir.1972)). Thus, the Government does not have to show irreparable harm or balance the parties' interests. Instead, "the requirements for injunctive relief are met 'when the government establishes that defendants have violated the statute and ... [there] exists some cognizable danger of recurrent violation.'" *Medina*, 718 F.Supp. at 930 (quoting *United States v. Sene X Eleemosynary Corp.*, 479 F.Supp. 970, 981 (S.D.Fla.1979) (internal quotations omitted)). Here, the Court finds that the Government has offered sufficient evidence at the preliminary injunction stage to show that Defendants violated the statutes at

---

**2.** This Temporary Restraining Order was extended several times with regard to the individual defendants and currently has been extended until January 21, 2011. *See* (D.E. No. 54).

**3.** A Clerk's Default has also been entered against the corporate defendants and the United States has moved for a default judgment and permanent injunction against these defendants. *See* (D.E. Nos. 40, 52).

issue and to show that there is a danger of recurrent violation.

First, the Court finds that the Government has offered sufficient evidence that Defendants committed Federal health care fraud. The United States alleges that the individual Defendants owned and operated the corporate Defendants as community mental health clinics that were supposed to provide psychiatric partial hospitalization programs for the mentally ill, but instead used those entities to perpetrate a massive fraud upon the Medicare program. The United States also alleges that the Defendants collectively received over $85,000,000 from Medicare as a result of their fraud. As discussed below, the Court finds that the government has more than met its burden of proving these allegations.

■ The Defendants Duran, Valera, and Negron owned and controlled the corporate Defendants, American Therapeutic Corporation ("ATC"), MedLink Professional Management Group, Inc. ("MedLink"), American Sleep Institute, Inc. ("ASI"), and D & V Development, Inc. ("D & V"). (D.E. No. 5, Baily Decl. at ¶¶ 5–19); *see also* (D.E. No. 47 at 1); (D.E. No. 45 at 1–2); (D.E. No. 46 at 3). ATC submitted claims to Medicare that resulted in Medicare paying ATC approximately $83,021, 115.54. (D.E. No. 5, Bailey Decl. at ¶ 48). In addition, ASI submitted claims to Medicare that resulted in Medicare paying ASI approximately $1,951,200.35. *Id.* at ¶ 51. ATC and ASI were used as vehicles to perpetrate a fraud on the medicare program which included (1) "conspiring to submit and submitting false claims to the Medicare Program that were tainted by illegal kickback payments; (2) conspiring to submit and submitting false claims and statements to the Medicare Program for medically unnecessary ... [partial hospitalization program] services provided by ATC and sleep study services provided by ASI; (3) making false

statements and claims in Medicare cost reports where ATC failed to disclose related party transactions; and (4) engaging in fraudulent transfers to convert Medicare funds to ill gotten personal gains." *Id.* at ¶ 43; *see also id.* at ¶¶ 44–74. The Court also finds the testimony of Special Agent Mejia on this matter credible. Thus, the Court finds that the government has met its burden to show a Federal health care offense has been committed.

The Court also finds that the government has offered sufficient evidence to demonstrate that Defendants have dissipated the proceeds of their Medicare fraud. The approximately $83,000,000 deposited in ATC's account and the approximately $2,000,000 deposited in ASI's account were transferred by Defendants to themselves directly and by using shell companies owned and operated by Defendants Duran, Valera, and Negron. (D.E. No. 5, Bailey Decl. at ¶¶ 77, 81, 83–99). The funds were used for such purposes as purchasing a condo for Valera, paying personal property taxes for Duran and Negron, purchasing jewelry, paying school tuition for Duran's children, and paying high salaries to the individual Defendants. *Id.* at ¶ 84;Testimony of Special Agent Mejia at Jan. 11 hrg.; Gov't Exhs. 1, 5 at Jan. 11 hrg. At this time, the government has been unable to locate a large portion of the proceeds of the medicare fraud.

Finally, the Court also finds that the government has sufficiently demonstrated that there is a cognizable danger of recurrent violation. "Once the government establishes the existence of the statutory violation, the burden shifts to the defendants to show that there is no reasonable expectation that the wrong will be repeated." *Sene*, 479 F.Supp. at 981 (internal quotations omitted). In this case, Defendants have not offered any evidence that the wrong will not be repeated. Defendants' arguments that they will not re-

peat the violations because they have been indicted in a criminal case is unavailing. *Id.* (finding that "[a] claim by defendants that they are ready to cease violating the law is unavailing, for mere cessation of violative activities is not, in and of itself, grounds for denial of a statutory injunction sought to protect the public health.... This is particularly true where such cessation arises only as a result of official pressure or threatened litigation.").

Moreover in this case, the government has demonstrated that the Defendants established and operated corporations to perpetrate Medicare fraud and then attempted to conceal the profits from their scheme. (D.E. No. 5, Baily Decl. at ¶¶ 43, 83–99); (Testimony of Special Agent Mejia at Jan. 11 hrg.). ATC and ASI were established and operated in the names of Valera and Negron to hide the involvement of Duran. *Id.* at 14. Based upon Defendants flagrant and duplicitous schemes there is a substantial danger that Defendants will continue to violate this provision in the future unless an injunction is issued. Thus, the Court grants the government's motion for a preliminary injunction against Defendants Duran, Valera, and Negron.

## II. Defendant Negron's Motion to Dissolve or for Release of Funds

Defendant Negron has also moved to dissolve or modify the temporary restraining order or alternatively, for release of funds for attorney's fees and costs of defense. First, Defendant Negron argues that this Court should not have entered the temporary restraining order and should not enter a preliminary injunction against her because there has not been a sufficient showing that she committed or is about to commit a Federal health care offense or that she alienated or disposed of

property or intended to alienate or dispose of property obtained as a result of a Federal health care violation. For the reasons discussed above in the section granting the motion for preliminary injunction,[4] the Court finds Defendant Negron's arguments on this issue are without merit.

■ Next, Defendant Negron argues that the government's restraint on her "property of equivalent value" is improper and prohibits her from exercising her Sixth Amendment right to retain counsel of her choice and fund the costs of her defense in this case and in her criminal case. This Court disagrees. First, it is entirely proper for the government to enjoin not just the dissipation of the Defendants' assets that are traceable to the fraud but also any property of equivalent value. 18 U.S.C. § 1345(a)(2) explicitly provides that if a person has alienated or disposed of property or intends to alienate or dispose of property obtained as a result of a health care offense, the government may seek an order "prohibiting any person from withdrawing transferring, removing, dissipating, or disposing of any such property or property of equivalent value." *See also United States v. DBB, Inc.,* 180 F.3d 1277, 1286 (11th Cir.1999) (finding that section 1345(a)(2)(B) provides "broader relief for situations where the property obtained through fraud is not as easily identified. It allows the government to prevent the withdrawing, transferring, removing, and dissipating of an amount of the defendant's assets equal to that obtained through fraud ... [, and] the use of the phrase 'any person' in subsection (a)(2)(B) appears to also authorize injunctions that prevent third parties from removing a defendant's assets.").

■ The lawful freezing of Defendant Negron's assets does not implicate her

---

4. The Court also considered United States Investigator Kendrick Bailey's Declaration in issuing the temporary restraining order in this action.

Sixth Amendment right to counsel in this civil case or in the criminal case. It is well-established that a civil litigant does not have a Sixth Amendment right to counsel. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir.1999); *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1118 (5th Cir.1980). Moreover, Defendant Negron is represented by the Federal Public Defender in her criminal case. (D.E. No. 113, in Case No. 10–20767–CR–KING).[5] It is equally well-established that "[a]lthough the Sixth Amendment guarantees counsel [in a criminal case], it does not grant [criminal] defendants the unqualified right to counsel of their choice." *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008). This is particularly true where the Defendant cannot afford to pay counsel of her own choosing. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (stating that "a defendant may not insist on representation by an attorney he cannot afford"). Moreover, "the Government does not violate the Sixth Amendment if it seizes ... [ill-gotten gains] and refuses to permit the defendant to use them to pay for his defense." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). Thus, the Court denies Defendant Negron's motion.

### III. Intervenor Negron's Motion to Dissolve or Modify Temporary Restraining Order

Finally, Intervenor Negron has moved to dissolve or modify the temporary restraining order, arguing that jointly held bank accounts and a jointly owned residence which are subject to this order were wrongfully seized and restrained. First, Intervenor Negron argues that for assets to be frozen they "must in some way be traceable to the allegedly illicit activity." (D.E. No. 34 at 4). For the reasons discussed above in relation to Defendant Negron's motion, the Court finds this argument is without merit and finds it entirely proper for the government to freeze "property of equivalent value." 18 U.S.C. § 1345(a)(2)(B); *DBB, Inc.*, 180 F.3d at 1286.[6]

Intervenor Negron also appears to argue that the assets at issue may not be frozen because they are jointly held. This argument fails because joint assets are equally owned by the Defendant, and her assets clearly may be frozen under section 1345. *See United States v. Craft*, 535 U.S. 274, 288, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) (finding that property owned by a spouse as a tenancy in the entirety "constituted 'property' or 'rights to property' for the purposes of the federal tax lien statute."); *see also Beal Bank v. Almand and Assocs.*, 780 So.2d 45, 53, 58 (Fla.2001) (stating that "[w]hen a married couple holds property as a tenancy by the entireties, each spouse ... holds the whole or the entirety, and not a share, moiety or divisible part" and finding that joint bank accounts are presumed to be held as tenancies in the entirety) (internal quotation marks omitted). Failure to secure the joint assets would frustrate the congressional intent behind section 1345, which is to "preserve the defendant's assets until judgment requiring restitution or forfeiture ... [can] be obtained." *See DBB, Inc.*, 180 F.3d at 1284.[7] Accordingly, it is hereby:

5. The Court has taken judicial notice of this.

6. Moreover, there is evidence in the record that at least part of the joint assets involved involved proceeds from the Medicare fraud. *See* Gov't Exhs. 7, 8 at Jan. 11 hrg.; Intervenor Exhs. E–F at Jan. 11 hrg.

7. The Court notes that Intervenor Negron has established that he has his own source of income from World Wide Pools, which will allow him to meet his living expenses. Nothing in this order prevents Intervenor Negron from living in the jointly owned home.

**ORDERED AND ADJUDGED** that

1. The United States's Motion for Preliminary Injunction (D.E. No. 3) is **GRANTED.** A preliminary injunction is entered against Defendants Lawrence Duran, Marianella Valera, and Judith Negron.

   a. Defendants Duran, Valera, and Negron, their respective, agents, employees, attorneys and all persons acting in concert and participation with them, including all banking and other financial institutions at which they do business, and all corporations over which they exercise control, who receive actual or constructive notice by personal service, by publication, or otherwise shall be enjoined as follows:

   i. From making or submitting or conspiring to make or submit any claims to the Medicare program or any health care benefit program, as defined in 18 U.S.C. § 24(b), in violation of 18 U.S.C. § 287, 18 U.S.C. § 371, 18 U.S.C. § 1001, or 18 U.S.C. § 1347, and from committing any Federal health care offense, as defined in 18 U.S.C. § 24.

   ii. From alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, any moneys or sums presently deposited, or held on behalf of Defendant Duran, Valera, or Negron, by any financial institution, trust fund, insurance company, or other financial entity, public or private, that are proceeds of profits from Defendants' Federal health care offenses or property of an equivalent value of such proceeds or profits; and

   iii. From alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, assets, real or personal (including, for example, real estate, motor vehicles, boats and watercraft, jewelry, artwork, antiques, household furniture and furnishings, etc.), in which Defendant Duran, Valera, and Negron has an interest, up to the equivalent value of the proceeds of the Federal health care fraud ($84,972,315.89);

   b. Defendants Duran, Valera, and Negron, their respective, agents, employees, attorneys and all persons acting in concert and participation with them, including all banking and other financial institutions at which they do business, and all corporations over which they exercise control, who receive actual or constructive notice by personal service, by publication, or otherwise shall:

   i. Preserve all business, financial and accounting records, including bank records, that detail any Defendant's business operations and disposition of any payment that directly or indirectly arose from the payment of money to any Defendant on behalf of the Medicare program;

   ii. Preserve all medical records, including patient records, that relate to any of Defendants' business operations and/or that relate to services for which claims were submitted to the Medicare program;

   c. Defendants Duran, Valera, and Negron, within ten (10) days of receiving notice of this Order shall provide the United States with the following:

   i. a list of all financial institutions, including but not limited to banks and brokerage houses, at which there are now, or have been maintained in the past seven years, any savings, checking, money market, investment, retirement, or any other kind of account or other safe deposit box into which money has

been deposited in any Defendant's name or in the names of any of their agents, employees, officers, persons acting in concert with them, or any business names under which they operate, together with the number or other designation of each such account or box;

ii. a list of all financial institutions, including but not limited to, banks and brokerage houses, at which there are now, or have been maintained in the past seven years, any savings, checking, money market, investment, retirement, or any other kind of account or other safe deposit box into which monies received in response to any of the activities described in the United States' complaint, have been deposited, together with the number of such box or other designation of each such account or box, and

iii. the names, addresses, and telephone number of any individuals who have received remuneration of any kind for assisting in record-keeping, bookkeeping, accounting, brokering, or financial, investment, or tax advice or consultation for any Defendant in the past three years.

d. The preliminary injunction shall remain in force until further Order of the Court, provided, however, that nothing in this Preliminary Injunction shall prevent any Defendant from surrendering to the United States any assets frozen by this preliminary injunction, if the United States consents to such voluntary surrender.

2. Intervenor Hector Negron's Motion to Dissolve or Modify Temporary Restraining Order (D.E. No. 34) is **DENIED.**

3. Defendant Judith Negron's Motion to Dissolve or Modify Temporary Restraining Order or Alternatively, for Release of Funds for Attorney's Fees and Costs of Defense is **DENIED.**